**East Pennsburg Township Authority v. Department of Environmental Resources**

*Eugene E. Dice,* for the Commonwealth.

*Thomas I. Myers* and *David B. Disney,* for appellant.

COHEN, Member, August 9, 1974.—This matter is before the board on petition of the Pennsylvania Department of Environmental Resources, filed on March 13, 1974, for reargument and reconsideration of the board's adjudication in this matter entered March 8, 1974, in which this board issued, inter alia, the following order to the Department of Environmental Resources:

"The Department is further ordered to issue the necessary sewer extension permit to M.L.W. Construction Company upon compliance with all formal requirements."

The petition for reargument and reconsideration is directed only at that portion of the board's prior adjudication quoted above. There are essentially two contentions set forth in the petition: (1) The department properly- denied an application for a sewer extension on the basis of an independent review of the application for a sewage extension permit, and (2) the board lacked jurisdiction to hear and determine any question relating to the sewer extension application for the reason that an appeal from such denial was not timely filed.

Although the facts of this case are set forth in a previous adjudication of this board, it will facilitate an understanding of the issues involved to recapitulate them in an abbreviated form.

On August 24, 1974, the Pennsylvania Department of Environmental Resources issued an order to East Pennsboro Township and East Pennsboro Township Authority forbidding them to permit sewer connections to the East Pennsboro sewer system from that time forward. Three days prior to the issuance of the sewer connection ban, the M.L.W. Construction Company, intervenor in this matter, was issued building permits for 224 apartment units which were under construction at the time the adjudication was issued. The Department of Environmental Resources has a stated policy with respect to sewer connection bans which permits connections after the date of issuance of the ban in those cases in which building permits were issued prior to the issuance of the ban. Inasmuch as the ban was issued on August 24, 1973, and the building permits were issued to intervenor on August 20, 1973, intervenor could, under this policy, connect the 224 apartment units for which building permits had been issued to the East Pennsboro sewer system.

The apartment units for which construction permits had already been issued were located some 700 feet from the main line of the sewer system. M.L.W. Construction Co., rather than have separate lines running from each apartment unit to the main sewer line, proposed to install an extension from the main line to a point where the apartment units could easily connect to the extension. This would effectuate a substantial cost savings. To accomplish its purpose, M.L.W. Construction Company applied to the Department of Environmental Resources for a sewer extension permit that would enable it to serve the apartment unit in its development. On August 22, 1973, the department denied the application for a permit for the sewer extension. On September 24, 1973, M.L.W. Construction

Company filed with this board a petition to intervene in this proceeding which the board subsequently allowed. The denial by the Department of the application for the sewer extension effectively denied intervenor the right to connect in an economically efficient manner the apartments to the sewer system, although the apartments were not within the preview of the ban, for reasons stated above.

In its previous adjudication, the board stated:

"Turning now to the Intervenor M.L.W. Construction Corporation, we believe that, inasmuch as the building permits were issued prior to the imposition of the sewer ban, it comes within an exception long recognized by this Board in re: Alan Mitchell Corp., EHB Docket No. 71-108 (issued June 7, 1972).

"In addition, the order issued by the Department on August 24, 1973, specifically states regarding the sewer ban: 'This prohibition does not apply to sewage discharges to be generated as a result of new construction for which building permits were issued prior to the date of issuance of the Order.'

"It is therefore clear that the Department may not now employ the device of denial of a sewer extension permit to indirectly nullify what has been so directly stated."

Upon reconsideration of our adjudication of March 8, 1974, and after oral argument upon the Department's petition and after the submission of briefs, we reaffirm our previous adjudication for the reasons set forth below.

The order of this board, which is the subject matter of these proceedings, does not require the department to forego its regular procedures with regard to the review and evaluation of applications for sewer extension permits. In the normal situation, where a sewer extension permit is denied and the reasons for denial

are deficiencies which are corrigible by the applicant, the applicant by either amending the old application or submitting a new one may receive approval if the deficiencies giving rise to the original denial are corrected. Nothing in our prior adjudication would mandate the department approving an application for a sewer extension permit made by intervenor if the application contained such deficiencies. To put such a construction on our order is both unreasonable and unnecessary. We mandated the issuance of the permit for the sewer extension only if other requirements for issuance of the permit had been met, the only outstanding objection being the fact that the sewer system of East Pennsboro Township was hydraulically overloaded.

At oral argument and in the parties' briefs submitted thereafter, much attention was given to the question of whether the pipe which formed the subject matter of the sewer extension application was in fact a sewer extension. Although there is no case cited to this board nor any other source defining the term "sewer extension," we are of the opinion that the proposed pipe constituted a sewer extension. In our view, the term "sewer extension" is a term of art which refers to any outreach of a sewer system the design and purpose of which is to facilitate sewer connections with such system. We are not persuaded by intervenor's contention that the proposed line is not a "sewer extension" for the reason that it would be solely on the property owned by intervenor. We cannot understand how the circumstance of ownership would in any way be determinative of whether such line was a sewer extension.

We agree with the department's position that the proposed line was a sewer extension and in need of a permit under the provisions of section 207 of the Clean Streams Law, Act of June 22, 1937, P. L. 1987, as

amended, 35 PS §691.1. However, whether the line in question is a sewer extension and, therefore, requires a permit from the department is not dispositive of the correctness of the board's previous action. We believe that it is the failure of the department to understand the nature of the board's order and the basis therefor that gave rise to its petition for reargument and reconsideration.

In its brief, the department concedes that if the development in question were located in relationship to the existing sewer line, such that each home or each apartment unit would have a separate connection to the sewer line, then it is true that the department would probably consider each connection a hookup rather than a sewer extension. In that case, the department concedes, since the permits were issued before the ban was imposed, the terms of the order and department policy would allow the hookup.

The board is advised by the department that even if intervenor's application for a sewer extension were in all other respects proper, it would nevertheless refuse to grant the permit for the reason that the township sewage system is hydraulically overloaded. This attitude of the Department fails to take into consideration that, as long as the sewer ban is in effect, new hookups to the extension could only occur within the constraints of the order of this board issued March 8, 1974. This order provides in essence that connections to the sewer system cannot exceed in the entire township more than three dwelling units per month unless otherwise agreed to by the parties.

The department would have this board rule that, even though the apartment units would be entitled to hookup to the sewer system under departmental policy irrespective of the ban and, even though the application for the sewer extension was in all other respects proper and would have been approved but for the same

reasons that gave rise to the issuance of the ban, the department would still be unwilling to grant the permit for the sewer extension. Able counsel for the Commonwealth by letter dated May 30, 1974, informed the board of this departmental position in unequivocal language. He stated:

"Even assuming that the problems with the application referred to above are resolved, the Department would not favorably consider the application or grant the permit but for the requirement in the Environmental Hearing Board Adjudication that it do so. . ."

The fact that a sewer extension requires a separate permit cannot justify the department in refusing to grant such a permit in a situation where, under the facts, permits would be granted for sewer hookups conveying an equal volume of sewage from the same apartment units. Under the facts of this case, the difference between a sewer extension and a sewer hookup is one of form, not substance. Thus, we are still of the opinion that our adjudication in respect to intervenor should be affirmed as being consistent with avowed departmental policy. Nothing which appears of record would tend to vitiate the board's order in this regard.

With regard to the issue of jurisdiction, we are constrained to observe that nothing in the record would indicate that the intervention occurred more than 30 days after intervenor received notice of the refusal of the extension permit. Section 21.21 of the Rules of Practice and Procedure before this board require that appeals be taken within 30 days after written notice is received of departmental action.

### ORDER

And now, August 9, 1974, upon consideration of the departmental petition for reargument and reconsideration, it is hereby ordered that the adjudication of this board issued on March 8, 1974, is affirmed in all respects.